[Crim. No. 8861.   Second Dist., Div. One.   Nov. 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ALLEN COLEMAN, Defendant and Appellant.

Richard D. Thompson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused of grand theft in that he did unlawfully take tools of a value in excess of $200, which were the property of Willie Smart. In a trial by jury he was found guilty. He was sentenced to imprisonment in the state prison. He appeals from the judgment.

■ Appellant contends that the evidence was insufficient to support the verdict.

A vacant lot and a shed at 12600 Wilmington Avenue, which formerly had been used as a gasoline service station, were being used by various persons as a place for repairing automobiles. Some of the persons repaired their own automobiles. It seems that Clarence Robinson was regarded as the proprietor or person in charge of the place.

Willie Smart, an automobile mechanic, testified as follows: Before September 19, 1962, he had been at said place repairing a 1956 Ford car. On September 19, about 11 a.m., when he decided to go to Gardena to get a crankshaft, he placed his tools in the trunk at the back of the Ford, locked the trunk and doors of that car, and put the keys in his pocket. He went to Gardena in another car. When he returned to the Ford about 3 p.m. of that day, and looked in the trunk, the tools were not there. Three drawers of the tool box were empty, and his jacket and other things were also missing. He had not given anyone permission to take the tools. The value of the tools was about $800. He had bought some of the tools from the Snap-On Tool Company in April, and had paid $600 for them; and he had bought some of the tools from Sears and was still paying therefor. Defendant Coleman was about 10 feet from the Ford when Smart left to go to Gardena. Clarence Robinson and Clarence Jones were the only persons at the repair place when Smart returned. After the police arrived, he (Smart) noticed that the glass in a front windwing had been cracked.

Clarence Jones, called as a witness by the prosecution, testi-

fied as follows: That on September 19, while was was repairing his car at said place, he saw the defendant Coleman and Clarence Robinson doing something at the left front door of the Ford which Smart had been repairing. Thereafter he saw that defendant Coleman had the Ford trunk unlocked and open, and that he was taking tools out of the trunk and putting them in a 1957 Dodge car. Then the defendant Coleman drove the Dodge away and did not return until approximately 5 p.m. The police were there when Coleman returned. Coleman, who had been around the place a few days prior to September 19, was washing cars for Robinson.

Deputy Sheriff Stanton testified: that in a conversation with defendant on September 20, the defendant said that he did not take any tools and did not know anything about them. A few minutes thereafter, when another deputy sheriff was present with them, Deputy Stanton said that Clarence Jones had seen Coleman take the tools. Then defendant said, "Yes, I did take the tools." The deputy (Stanton) asked how he took them. He replied that he and Robinson looked in the window of the car, but he did not know why Robinson was concerned about getting the key and getting into the car; that he (defendant) took the tools from the trunk, put them in a 1957 Dodge, and drove that car to a motel at Broadway and Century Boulevard. Thereafter the two deputies and the defendant went to the motel, but they did not find any tools there. Later, the defendant said that he did not have anything to do with the tools.

Defendant testified: That when he arrived at the repair place about 7:30 a.m. on said September 19, he and Robinson opened the place, and then he (defendant) went to sleep and slept until after 11 a.m., when Robinson asked him to road test the brakes of a car. He was gone about twenty minutes in making the test, and when he returned the police were there. In response to questions by the police, he first said that he did not know anything about the tools, but later he said that he had taken the tools, and had taken them to the motel. His reason for telling the police that he had taken the tools was to stop so much questioning. He implicated Robinson in the matter so that Robinson would find the person who took the tools, and that would clear defendant of the charge. He (defendant) did not take the tools.

On cross-examination, the defendant said that he had been convicted of a felony, armed robbery.

Section 487 of the Penal Code provides, among other

things, that grand theft is committed when the personal property taken by theft (such as the kind involved here) is of a value exceeding $200.

█ Appellant argues that since there was no evidence (1) as to the specific items or tools that were taken, or (2) as to the qualifications of the owner as an expert on the value of such items, or (3) as to age or condition of the items; and since the items were not before the court for observation; the owner's testimony as to the total value of the various items was insufficient as proof that the value of the property taken exceeded $200.

The tools involved herein were the kind of tools used by mechanics in repairing automobiles. Mr. Smart, the owner of the tools, was an automobile mechanic, and he had paid $600 for some of the tools approximately five months prior to the theft, and he had not finished making the payments on the other tools. Under such circumstances it is reasonable to infer that the owner was familiar with the cost, condition, and use of the tools. ''The owner of personal property who is familiar with its original cost and use is qualified to testify regarding its value. ...'' (*People* v. *Haney*, 126 Cal.App. 473, 475 [14 P.2d 854].) The point raised on appeal regarding the owner's qualifications to testify as to the value of the tools was not raised at the trial. There was no cross-examination regarding the owner's statement as to value; nor was there any cross-examination on the subject of the specific tools taken. The testimony of the owner was to the effect that when he was preparing to go to Gardena he placed his tools in the trunk and that when he returned those tools were missing. It is clear that the owner in referring to the stolen tools was referring to all the tools he had placed in the trunk, and that in testifying as to the value of the tools he was also referring to those same tools, for some of which he had recently paid $600, and for some of which he was still making payments. The owner herein was qualified to testify as to the value of the tools.

Appellant relies principally on *People* v. *Simpson*, 26 Cal. App.2d 223 [79 P.2d 119]. In that case the defendants were found guilty of grand theft in taking twelve magnetos. The magnetos involved therein had been taken from second-hand or used tractors, some of which had been in the possession of the owner for more than a year. The owner therein testified that the value of the magnetos was from $25 to $35 apiece. The court said (p. 225) that the questions and answers

(answers of owner) indicate that the owner was not really giving the market value of the different magnetos. The court said further (p. 225): "His [owner's] testimony is further to the effect that the magnetos came with the tractors, and it shows that he had neither bought nor sold magnetos, nor did he pretend to give the age of the magnetos, or how long they had been in use; they simply came with the used tractors as a part of the equipment." The judgment of conviction in that case was reversed on the ground that the jury had no substantial basis upon which to fix the value.

The present case is distinguishable from the *Simpson* case in that the evidence in the present case was sufficient, as above indicated, to show that the owner herein was qualified to testify as to the value of the tools. The evidence herein as to the value of the tools was sufficient legally to prove a value exceeding $200.

The evidence was sufficient to support the verdict.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 7, 1964.