Filed 1/4/16  P. v. Young CA3
Opinion on transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Mono)

----

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>TAMIE SUE YOUNG,<br><br>   Defendant and Appellant. | C075805<br><br>(Super. Ct. No. MFE13001273)<br><br>OPINION ON TRANSFER |

A jury convicted defendant Tamie Sue Young of first degree burglary (Pen. Code, § 459; unless otherwise stated, statutory references that follow are to the Penal Code) and grand theft from an elder (§ 368, subd. (d)(2)).  The trial court placed defendant on three years' probation with 200 days in county jail.

On appeal, defendant contends there is insufficient evidence of the market value of the stolen items to support the grand theft from an elder conviction, the trial court did not properly instruct the jury, and she is entitled to two days of presentence conduct credits.

1

In our original opinion, we affirmed the judgment in its entirety. The Supreme Court granted review and subsequently transferred the matter back to us with directions to vacate our decision and to reconsider the conduct credit issue in light of *People v. Dieck* (2009) 46 Cal.4th 934 (*Dieck*). Pursuant to the directions of The California Supreme Court, we vacated our prior decision on October 21, 2015, and have reconsidered the matter.

Defendant is entitled to two days of conduct credits and we shall modify the judgment accordingly. In all other respects we shall affirm.

FACTS AND PROCEEDINGS

Seventy-four-year-old Sharon Thompson and her 78-year-old husband Paul Thompson lived by themselves in their home in Bishop. In spring 2012, Sharon Thompson hired defendant to do housecleaning. Defendant cleaned the Thompson home every two weeks. She cleaned the home for about two hours and was not supervised.

Sharon Thompson owned a gold plumeria ring set with small diamonds and a Swiss Bucherer pendant watch on a 32-inch gold chain, storing them in a special spot in the master bedroom. She wore the jewelry to church on January 20, 2013. The next day, she noticed that they and a kangaroo charm on a gold rope chain were missing. Paul Thompson noticed his gold Southern California Edison 35-years-of-service ring was also missing. Defendant cleaned the Thompson home on January 21, 2013. While cleaning the house, defendant went to her car at least once.

Sharon Thompson had bought over 20 pieces of gold jewelry. She purchased the plumeria ring in Hawaii for $630. She estimated the value of the kangaroo charm and gold chain to be around $600. She had bought the watch and chain in Switzerland, and estimated its value at $1,200. Paul Thompson, who collected gold coins and followed the market price of gold, estimated his ring was worth between $500 and $600.

2

Mono County Sherriff's investigator John Rutowski went to local jewelry, antique, and pawn shops to locate the stolen jewelry. Sharon Rock, the owner of Lyon Jewelers in Bishop purchased the kangaroo charm and plumeria ring from defendant. Investigator Rutowski obtained a copy of the store receipt and the check that Rock wrote to defendant for the jewelry on January 22, 2013. The investigator also obtained the plumeria ring, which Sharon Thompson identified as hers. Rock testified and confirmed purchasing the jewelry. As was her practice, she bought the items for the scrap value of the gold, giving defendant a $280 check for the items.

The defense presented numerous witnesses who employed defendant as a housecleaner and testified to her good character for honesty.

DISCUSSION

I

*Sufficiency of the Evidence*

Defendant contends there is insufficient evidence of the market value of the jewelry she stole to support the conviction for grand theft from an elder.

" 'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--evidence that is reasonable, credible and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) Reversal on the ground of insufficiency of the evidence "is unwarranted unless it

3

appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support . . .' " the jury's finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Section 368 states in pertinent part: "(d) Any person who is not a caretaker who violates any provision of law proscribing theft, . . . is punishable as follows: [¶] (1) By a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or by both that fine and imprisonment, or by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years, or by both that fine and imprisonment, when the moneys, labor, goods, services, or real or personal property taken or obtained is of a value exceeding nine hundred fifty dollars ($950)."

Noting that section 368 does not specify how the $950 threshold is determined, defendant suggests looking to the law of theft since section 368 applies to the violation of "any provision of law proscribing theft." The statute proscribing theft, section 484 states in pertinent part: "In determining the value of the property obtained, for the purposes of this section, the reasonable and fair market value shall be the test." (§ 484, subd. (a).) Defendant next looks to the Code of Civil Procedure to define fair market value. "The fair market value of the property taken is the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available." (Code Civ. Proc., § 1263.320, subd. (a).) From this he reasons that the only evidence of fair market value is the $280 amount given by the jewelry shop owner, as an estimate of value based on the purchase price of an item does not accurately reflect the item's fair market value.

Defendant does not cite and we cannot find any authority applying the definition of fair market value from Code of Civil Procedure section 1263.320 to a theft case or any

4

other criminal case. This statute is in title 7, the part of the Code of Civil Procedure governing eminent domain law. Unsurprisingly, it is the test of determining fair market value for compensation in eminent domain proceedings. (*City of San Diego v. Barratt American, Inc*. (2005) 128 Cal.App.4th 917, 933.) It does not define fair market value for determining the degree of theft.

Case law more specifically provides that "fair market value" means the highest price agreed upon by a willing buyer and willing seller at the time and place of the theft. (See *People v. Pena* (1977) 68 Cal.App.3d 100, 103-104.) An owner of property is qualified to opine as to value of property he or she owns. (Evid. Code, § 813, subd. (a)(2); *People v. More* (1935) 10 Cal.App.2d 144, 145.) "The weight to be given the owner's testimony as to value is for the trier of the fact [citation]." (*People v. Henderson* (1965) 238 Cal.App.2d 566, 567.)

The victims' testimony is sufficient evidence establishing a value of the stolen jewelry exceeding $950. The $280 paid by the jeweler does not establish the highest price available; the jewelry was not sold to the jeweler as jewelry but only for its scrap value as gold. In addition, the jeweler did not purchase what may have been the most expensive item taken, the Swiss watch. Substantial evidence supports defendant's conviction.

## II

### *Jury Instructions*

Defendant contends the trial court erred by failing to instruct the jury on the definition of fair market value for the charge of grand theft from an elder and did not give an instruction on the lesser included offenses of grand theft or petty theft.

The trial court gave the following version of the instruction on degrees of theft, CALCRIM No. 1801: "If you conclude that the defendant committed a theft, you must decide whether the crime is a grand theft or a petty theft. The defendant committed grand

5

theft if she stole property worth more than $950. The value of property is the fair market value of the property. All [other] theft is petty theft. The People have the burden of proving beyond a reasonable doubt that the theft was grand theft rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of grand theft."

CALCRIM No. 1801 also contains the following instructions on fair market value that were not given: "Fair market value is the highest price the property would reasonably have been sold for in the open market at the time of, and in the general location of, the theft" and, "Fair market value is the price a reasonable buyer and seller would agree on if the buyer wanted to buy the property and the seller wanted to sell it, but neither was under an urgent need to buy or sell."

A trial court has a sua sponte duty to instruct the jury on the essential elements of an offense. (*People v. Cummings* (1993) 4 Cal.4th 1233, 1311.) In addition, " '[a] court must instruct sua sponte on general principles of law that are closely and openly connected with the facts presented at trial. [Citation.]' " (*People v. Moon* (2005) 37 Cal.4th 1, 25.) This sua sponte duty to instruct also mandates explanatory instructions when a term in an instruction has a "technical meaning that is peculiar to the law." (*People v. Howard* (1988) 44 Cal.3d 375, 408.) An appellate court applies the de novo standard of review in determining whether the trial court had a duty to give a particular jury instruction sua sponte. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569 (*Guiuan*).) " '[A] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.' [Citation.]" (*Id.* at p. 570.)

The trial court instructed the jury on the statutory element of fair market value. Defendant cites no authority for the proposition that fair market value is a technical term requiring additional instruction. By failing to request a clarifying instruction, defendant forfeited his claim that the trial court should have provided further clarifying instructions

6

regarding the definition of the term "fair market value." (See *Guiuan, supra*, 18 Cal.4th at p. 570.) Finally, in light of the overwhelming, uncontested evidence establishing the value of the stolen items, any instructional error was harmless beyond a reasonable doubt. (*Neder v. United States* (1999) 527 U.S. 1, 4, 15-16 [144 L.Ed.2d 35, 51]; *People v. Flood* (1998) 18 Cal.4th 470, 479-480, 503-504.)

Defendant's contention regarding lesser included offense instruction is also without merit. The jury was instructed on grand and petty theft and on grand theft from an elder, but was not instructed on petty theft from an elder. A trial court must instruct sua sponte on a lesser included offense when the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction on the lesser offense. (*People v. Hughes* (2002) 27 Cal.4th 287, 365.) In light of the evidence establishing the value of the stolen items, there is no evidence that would justify a conviction of the lesser included offense of petty theft from an elder. Therefore, the trial court had no duty to instruct on the lesser included offense.

III

*Conduct Credits*

The trial court awarded defendant three days of presentence custody credit and no conduct credit. She claims that she is entitled to two days of conduct credit under section 4019, which awards a defendant with two days of conduct credit for every two days of presentence custody.

She is correct. Section 4019, subdivision (e) provides: "A deduction shall not be made under this section unless the person is committed for a period of four days or longer." She is therefore entitled to conduct credit if her total commitment is for at least four days. (*People v. Dieck*, *supra*, 46 Cal.4th at p. 937.) A defendant earns two days of conduct credit for every two days of presentence custody. (§ 4019, subds. (c), (d), and

(f).)  Since she was committed to a 200 day jail term as a condition of her probation, she is entitled to two days of conduct credit.

DISPOSITION

The judgment is modified to award two days of custody credit for a total of five days of presentence credit.  As modified, the judgment is affirmed.

          HULL          , J.

We concur:

      NICHOLSON     , Acting P. J.

      RENNER         , J.

8