Filed 2/28/23  P. v. Garcia CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C095813 |
| Plaintiff and Respondent, | (Super. Ct. No. MAN-CR-FE-2021-0000139) |
| v. | |
| KIRK ANTHONY GARCIA, | |
| Defendant and Appellant. | |

Defendant Kirk Anthony Garcia appeals a judgment entered after a jury found him guilty of vehicle theft.  (Veh. Code, § 10851, subd. (a).)  Specifically, he challenges the admission of evidence concerning the value of the dump trailer used as bait by a regional auto theft prevention team in San Joaquin County.  Defendant complains the officer valuing the trailer lacked the personal knowledge required to testify as an agent of the owner, and that the trial court erred in allowing the officer to testify concerning hearsay sources of value.  Defendant argues we must reverse his judgment.  We agree.  Accordingly, we will reverse the judgment and remand for further proceedings.

1

FACTUAL AND PROCEDURAL BACKGROUND

The People proceeded to trial on the sole charge that defendant committed vehicle theft (Veh. Code, § 10851, subd. (a)) under alternative theories that he took and/or drove a trailer without the owner's consent.

At trial, the People presented evidence that the Delta Regional Auto Theft Team (RATT) parked a bait trailer[1] on the side of a road in Tracy on January 6, 2021, at approximately 8:30 a.m.  The trailer was equipped with a tracking device which notified the RATT that it was moving at approximately 11:20 a.m.  Authorities tracked the trailer, ultimately stopping defendant, who was driving the truck that was towing the trailer. Officer Montgomery Stickels of the California Highway Patrol (CHP), a member of the RATT, testified at trial that the fair market value of the trailer was between $4,000 and $5,000.

Following the close of the People's case, the trial court denied defendant's motion to dismiss for insufficient evidence of the trailer's value (Pen. Code, § 1118), finding Officer Stickels was a knowledgeable agent of the owner.  The court also denied defendant's motion to reduce the charge to a misdemeanor.  (Pen. Code, § 17, subd. (b).) Defendant elected not to present any evidence on the trailer's value, and the jury found defendant guilty as charged.  The verdict form did not specify whether the jury utilized the taking or driving theory of theft.  Thereafter, the trial court suspended imposition of sentence and placed defendant on two years of formal probation and ordered him to serve 120 days in county jail.  Defendant timely appealed, and appellate briefing in this matter was completed on November 22, 2022.

---

[1]    A "bait trailer" is a trailer deployed by the RATT task force in order to entice and catch thieves.

DISCUSSION

Defendant challenges the trial court's admission of evidence concerning the value of the RATT bait trailer, the subject of his vehicle theft conviction. Specifically, he argues the only evidence in the record valuing the trailer was impermissibly based upon unreliable offers of sale located on the Internet. Defendant reasons that because such offers of sale do not comply with the published compilation exception to the hearsay rule, the trial court erred in allowing Officer Stickels's testimony premised upon those offers. Moreover, he contends Officer Stickels lacked the personal knowledge required to offer an owner's lay opinion valuing the trailer. We agree that reversal is required.

A.      *Background*

The People presented evidence that an insurance company donated the bait trailer to San Joaquin County. To establish the value of the trailer, the People offered the testimony of Officer Stickels, a CHP officer, who had worked with the RATT task force for 16 years. San Joaquin County owned the trailer and assigned it to the RATT task force. Officer Stickels was familiar with the trailer, as he had seen it parked daily when not in use and estimated he had seen it used in arrests between approximately 50 and 100 times. The 2007 Dargo brand used trailer was uncovered, six feet by 10 feet, and had barn-style doors. It had two axles so that it could carry heavy loads, such as concrete, and hydraulics that lifted the bed to assist with dumping loads. While the trailer had some dings and dents, the frame was in good condition. The trailer was in similar condition as any other work trailer that might be towed down the street.

Over defense objection,[2] Officer Stickels estimated the trailer was worth between $4,000 and $5,000. He based this opinion on his 16 years of experience recovering stolen

_____

[2]      Defendant objected, arguing that Internet trailer listings were not competent evidence of value, that Officer Stickels was not qualified as an owner to testify, and that his opinion was based on impermissible hearsay. Out of the presence of the jury, the

3

trailers, including utility and dump trailers, as well as his research on Web sites such as Craigslist and OfferUp, from which he was able to determine replacement costs of similar trailers (e.g., two-axle dump trailers with a similar gross weight rating). Officer Stickels explained that it would cost around $10,000 to $12,000 to buy a new trailer of similar specifications and that these trailers depreciated more slowly because of their functionality. Accordingly, Officer Stickels believed the bait trailer was worth $4,000 and $5,000, even though it was 14 years old.

On cross-examination, the defense elicited testimony that the trailer had been donated, and thus was free to the county. Further, Officer Stickels was not trained in valuing trailers; did not buy or sell trailers; and did not call an authorized Dargo dealer to establish its value. Rather, he used Craigslist and OfferUp, which could be subjective, and Officer Stickels did not personally inspect any of the purported comparable listings, which were of a different brand. Officer Stickels also did not use a depreciation calculator to determine the depreciated value of the trailer. Rather, he relied partly upon his overall experience in dealing with trailer values derived from owner reports of value. Officer Stickels had recovered some stolen Dargo trailers over the years, but did not recall their specific model years.

B.     *Analysis*

Defendant was tried for vehicle theft (Veh. Code, § 10851, subd. (a)) under alternative theories that he took and/or drove the trailer without the owner's consent. One of the elements necessary to establish a felony violation under the *taking* theory is that the trailer had a fair market value of more than $950 at the time it was stolen. (CALCRIM No. 1820; *People v. Bullard* (2020) 9 Cal.5th 94, 109-110; *People v.*

---

court asked the prosecutor whether she had authority "for an officer looking up Craigslist to determine the value." The prosecutor said she did not, but said that she could lay the foundation for Officer Stickels's opinion about the value of the trailer "through his experience as a CHP officer for over 20 years."

4

*Romanowski* (2017) 2 Cal.5th 903, 914 [proper measure of $950 threshold for theft crimes is " 'reasonable and fair market value' "].)  Case law defines fair market value as " 'the highest price obtainable in the market place' as between 'a willing buyer and a willing seller, neither of whom is forced to act.' " (*People v. Grant* (2020) 57 Cal.App.5th 323, 329 (*Grant*); see also CALCRIM No. 1801 ["Fair market value is the highest price the property would reasonably have been sold for in the open market at the time of, and in the general location of, the theft"].)  The fair market value of stolen property may be established by opinion or circumstantial evidence.  (*Grant, supra*, at p. 329.)

To that end, case law has long recognized that an owner may testify concerning the value of his or her property.  (*People v. Coleman* (1963) 222 Cal.App.2d 358, 361; *People v. Henderson* (1965) 238 Cal.App.2d 566, 566-567 (*Henderson*); CALCRIM No. 1860.)  Such testimony also may be offered by agents of the owner, who have sufficient knowledge of the value of the property.  (Cf. Evid. Code, § 813, subd. (a)(3)[3] [market value of real property may be established by "[a]n officer, regular employee, or partner" of owner "if the designee is knowledgeable as to the value of the property or property interest"].)  "The weight to be given the owner's testimony regarding value is for the trier of fact [citation]."  (*Henderson, supra*, at p. 567; *People v. Pena* (1977) 68 Cal.App.3d 100, 103.)  "However, '[i]n stating his opinion as to the value of property, the owner is bound by the same rules of admissibility of evidence as is any other witness.' [Citation.]"  (*Kitchel v. Acree* (1963) 216 Cal.App.2d 119, 124, fn. omitted.)  Accordingly, an owner will not be allowed to introduce hearsay evidence[4] under the

---

[3]     Undesignated section references are to the Evidence Code.

[4]     Hearsay is evidence of a statement made outside of court that is offered in court for its truth and is generally inadmissible.  (§ 1200, subds. (a), (b).)

5

guise of offering information as a basis for the owner's opinion on the value of the property. (*Id*. at p. 125.)

" 'We review a trial court's decision to admit or exclude evidence "for abuse of discretion, and [the ruling] will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice." [Citation.] When evidence is erroneously admitted, we do not reverse a conviction unless it is reasonably probable that a result more favorable to the defendant would have occurred absent the error.' [Citation.]" (*People v. Young* (2019) 7 Cal.5th 905, 931.)

Given these rules, we find defendant has shown the trial court abused its discretion in admitting Officer Stickels's layperson opinion that the bait trailer was worth $4,000 to $5000. This is so because although there is abundant evidence in the record supporting Officer Stickels's familiarity with the trailer, there is no competent evidence in the record from which we can establish Officer Stickels's personal knowledge of the trailer's *value*, and thus he should not have been allowed to offer an opinion thereon.[5] (§§ 702, 800.)

Putting aside whether Officer Stickels, a CHP officer, should be treated as an agent of San Joaquin County for purposes of owner testimony in light of his assignment to the task force to which the trailer was donated (cf. § 813, subd. (a)(3)), there was no competent evidence from which we may conclude that Officer Stickels independently *knew* the trailer's value. (§§ 702, 800.) Unlike a typical owner who purchased the stolen item and thus knew the original cost (see *Henderson, supra*, 238 Cal.App.2d at p. 566 [watch and ring]; *People v. Coleman, supra*, 222 Cal.App.2d at p. 361 [mechanics tools];

---

[5]     On this point, we disagree with the People that defendant failed to preserve the issue for appeal. Defendant repeatedly complained that Officer Stickels lacked personal knowledge to testify concerning the trailer's value and that the knowledge he did have was derived from inadmissible hearsay.

6

*People v. Haney* (1932) 126 Cal.App. 473, 475-476 [saddle, harnesses, and other ranch equipment]), there was no testimony establishing how much the bait trailer originally sold for when it was new, nor did Officer Stickels know how much it was worth when it was donated to the county in 2016. Officer Stickels was not trained in valuing trailers, did not buy or sell trailers, and did not call a Dargo dealer to establish its value. Further, his general awareness of the worth of the trailer gleaned from his 16 years of experience with the task force was derived from owners' reports of stolen trailer values, which is hearsay for which no hearsay objection was offered and therefore did not form a competent foundation for his lay witness testimony.[6] (§§ 702, 800, 1200.)

Even more problematic is Officer Stickels's testimony regarding his online research on Craigslist and OfferUp into comparable new trailers. We recognize that the People were not required to find sale information identical to the bait trailer. (*Bagdasarian v. Gragnon* (1948) 31 Cal.2d 744, 755-756 [market prices and sales of similar items relevant to establish reasonable value thereof].) However, the comparable listings Officer Stickels referred to were merely offers for sale in an informal online marketplace. The informal nature of Craigslist and OfferUp distinguishes prices on these platforms from price listings at retail stores, which could create a rebuttable presumption of fair market value. (*People v. Tijerina* (1969) 1 Cal.3d 41, 45.) As such, these listings have marginal relevance to the fair market value of the trailer. (See *Grant, supra*, 57 Cal.App.5th at pp. 330-332 ["comparable value" from discount store price tags was not evidence of fair market value thereof].) The testimony relaying those listing prices was

---

**6** While such experience might have qualified Officer Stickels to testify as an expert in this area (§§ 801, 802), the trial court refused defendant's request for a hearing to test Officer Stickels's expertise and expressed doubt that he could qualify as an expert. Rather, Officer Stickels testified as a lay witness agent of the owner.

also objectional hearsay without an applicable hearsay exception and should have been excluded.[7]  (§§ 803, 1200; *Kitchel v. Acree, supra*, 216 Cal.App.2d at pp. 124-125.)

While it is unlikely that the task force would use a bait trailer in enforcement operations that had a fair market value below $950—because theft of that trailer would only result in a misdemeanor violation (CALCRIM No. 1820; *People v. Bullard, supra*, 9 Cal.5th at pp. 109-110)—this *supposition* does not excuse the People's failure to offer competent evidence establishing its value.  Indeed, it begs the question why the People did not have such evidence readily available in light of Officer Stickels's testimony that he had seen the bait trailer used in 50 to 100 arrests.

Nor can we conclude that the trial court's admission of Officer Stickels's valuation testimony was harmless.  (*People v. Young, supra*, 7 Cal.5th at p. 931; *People v. Watson* (1956) 46 Cal.2d 818, 836-837.)  That testimony was the only evidence in the record regarding the value of the stolen trailer, and we cannot conclude that jurors have a "common knowledge" of the value of a used dual-axle hydraulic dump trailer such as the one at issue in this case.  (See *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1366 [although the People failed to present evidence of the value of a BMW, "jurors could rely on their common knowledge that late-model BMW's have a substantial market value"].)  Therefore, without Officer Stickels's testimony, the People failed to present evidence from which the jury could find defendant guilty under the taking theory.  This is especially problematic because the verdict form used in this case did not ask the jury to specify whether the jury utilized the taking or driving theory.  Under these circumstances, we cannot tell which theory the jury relied upon, thus requiring reversal.  (*People v. Chiu*

---

**7**    The People seem to agree with defendant that these listings do not comply with the requirements of the published compilation exception to the hearsay rule.  (§ 1340; *People v. Jenkins* (2021) 70 Cal.App.5th 175 [Kelley Blue Book as qualifying for this exception].)

8

(2014) 59 Cal.4th 155, 167 ["When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground"], superseded on other issues by Senate Bill No. 1437 (2017-2018 Reg. Sess.), as stated in *People v. Lewis* (2021) 11 Cal.5th 952, 959, fn. 3.) Accordingly, we must reverse and remand to allow the People the choice of accepting the reduction of defendant's conviction to a misdemeanor or for retrial under the felony theory wherein the People may present competent evidence of the trailer's value. (*People v. Jackson* (2018) 26 Cal.App.5th 371, 381.)

DISPOSITION

The judgment is reversed, and the matter remanded for further proceedings consistent with this opinion.

                                                 KRAUSE          , J.

We concur:

     RENNER         , Acting P. J.

     EARL           , J.